**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:25-cv-25452-GAYLES**

**LORENZO ESTEVA,**

**Plaintiff,**

**v.**

**AVAIL 1 LLC; PLANET HOME LENDING, LLC; and RITTER, ZARETSKY, LIEBER & JAMIE, LLP,**

**Defendants.**
**______________________________________/**

## ORDER

THIS CAUSE came before the Court on Defendant Avail 1 LLC's Motion to Dismiss ("Avail Motion"), [ECF No. 15], and Defendant Ritter, Zaretsky, Lieber & Jamie, LLC's Motion to Dismiss Plaintiff's Complaint with Prejudice ("Ritter Motion"), [ECF No. 27], (together, the "Motions"). The Court has reviewed the Motions and the record and is otherwise fully advised. For the following reasons, the Avail Motion is denied and the Ritter Motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Lorenzo Esteva ("Plaintiff") is the owner of a home in Miami-Dade County, Florida (the "Home"). During the relevant time, Defendant Avail 1 LLC ("Avail") held the note and mortgage (the "Loan") on the Home; Defendant Planet Home Lending, LLC ("PHL") was the Loan servicer; and Defendant Ritter, Zaretsky, Lieber & Jaime, LLC ("Ritter") acted as an agent for Avail and PHL.

**A. The Foreclosure Proceedings**

On November 18, 2022, Avail filed a foreclosure action against Plaintiff (the "Foreclosure Action") in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "State Court"). On December 12, 2023, Plaintiff and Avail agreed to a nine-month forbearance period in exchange for a payment of $125,000 (the "Settlement Agreement"). [ECF No. 27-1]. Under the Settlement Agreement, the State Court "retain[ed] jurisdiction to enforce the terms of [the] settlement and to enter any other orders that are consistent with [the] Agreement including but not limited to, the Consent Judgment, a writ of possession of the [Home] to remove [Plaintiff] and any other occupants from the [Home]." *Id.* On February 26, 2024, the State Court entered a Consent Summary Judgment of Foreclosure (the "Consent Judgment"). [ECF No. 27-2]. On September 11, 2024, the parties amended the Settlement Agreement to extend the forbearance period by 90 days in exchange for an additional $150,000 payment (the "Settlement Amendment"). [ECF No. 27-3].[1]

**B. The Payoff Requests**

During the second forbearance period, Plaintiff explored refinancing options for the Home. To that end, on October 2, 2024, Plaintiff's counsel sent a letter to Ritter—Avail's agent—requesting the total payoff and per diem amounts for the loan (the "First Payoff Request"). [ECF No. 1-6]. Ritter responded on October 24, 2024, with a payoff statement listing amounts for the unpaid principal balance, pre- and post-judgment interest, escrow advances, recording fees, late

[1] Though the Settlement Agreement, Consent Judgment, and Settlement Amendment (collectively, the "Agreements") are not attached to the Complaint, under the incorporation-by-reference doctrine, the Court may consider them as they are "central to [Plaintiff's] claims and [are] undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

charges, foreclosure costs, attorneys' fees, and recordation of SAT (the "Payoff Statement"). [ECF No. 1-7]. The Payoff Statement did not contain an itemized breakdown of the escrow advances, late charges, foreclosure costs, and attorneys' fees. Rather, it stated that because the Loan was in "active collections, prior to initiating the payoff, [Plaintiff] must contact [Ritter] to ensure there are no further attorneys' fees/costs and/or advancements made for the protection of the property of which need to be added to the amounts below." *Id.*

Finding the Payoff Statement lacked sufficient detail "to ensure the debt's validity and accuracy of the amounts being collected[,]" Plaintiff contacted PHL on October 31, 2025 (the "Second Request"). [ECF No. 1-8]. In the Second Request, Plaintiff requested "a complete, itemized breakdown of the balance associated with [his] account." *Id.* PHL received the Second Request on November 2, 2024, [ECF No. 1 ¶ 44], but did not respond within ten days.

On November 18, 2024, Ritter filed a notice in the Foreclosure Action that the sale of the Home would be on December 16, 2024. [ECF No. 1-5]. The same day, Plaintiff's counsel emailed Ritter that Plaintiff would pay the Loan in full by November 21, 2024, if Ritter provided a detailed breakdown of the amounts for principal, interest, escrows, late charges, attorneys' fees, and any other charges. Ritter's counsel responded with two emails: one requesting that Plaintiff refer to the Payoff Statement and the other providing an Affidavit of Indebtedness, that purportedly had the "details/breakdown" and an Affidavit of Attorneys' Fees.

Having no response from PHL, Plaintiff sent it a notice of error (the "NOE") asserting PHL (1) failed to provide an accurate payoff balance, comply with Fla. Stat. § 701.04, apply accepted payments, and credit accepted payments and (2) imposed fess or charges without a reasonable basis. [ECF No. 1-10]. Plaintiff also claimed the Payoff Statement "include[d] charges [he] believed to be illegal and non-bona fide." *Id.* PHL did not respond within ten days.

On November 22, 2024, Ritter sent Plaintiff's counsel a letter stating that the Second Request and the NOE were a breach of the Settlement Agreement. As a result, Ritter claimed that Avail was entitled to pursue remedies under the Settlement Agreement, including (1) terminating the forbearance period, (2) retaining all forbearance payments and not applying them to the outstanding balance, (3) recover of additional fees or damages, (4) termination of any concessions granted in the Settlement Agreement, and (5) taking legal action to enforce compliance (the "Ritter Letter"). [ECF No. 1-11].

On December 13, 2024, days before the scheduled foreclosure sale, Plaintiff obtained a 14% interest rate mortgage loan from Goldfish Capital, LLC, and wired funds to Ritter. On December 20, 2024, the State Court vacated the Consent Judgment and dismissed the Foreclosure Action. [ECF No. 1-5].

### C. Procedural History

Plaintiff filed his Complaint on November 21, 2025, alleging PHL violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA") (Count I); Ritter violated the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") (Count II); Avail and Ritter violated Florida Statute § 701.04 (Count III); and all Defendants violated the Florida Consumer Collection Practices Act, Florida Statute § 559.72 ("FCCPA") (Count IV). PHL answered the Complaint. [ECF No. 22]. Avail moves to dismiss Counts III and IV, arguing (1) lack of subject matter jurisdiction, (2) the Complaint is a shotgun pleading, (3) the claims are barred by the litigation privilege, and (4) failure to state a claim. [ECF No. 15]. Ritter moves to dismiss Counts II and IV, arguing Plaintiff fails to state a claim. [ECF No. 27].

## II. LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Therefore, a complaint that merely presents "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.* (internal quotation omitted). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

## III. DISCUSSION

### A. The Court Has Subject Matter Jurisdiction

Avail argues that the Complaint should be dismissed for lack of subject matter jurisdiction because the claims arise from the Settlement Agreement and Consent Judgment, under which the State Court reserved jurisdiction to enforce the terms of settlement and enter any other orders that were consistent with the terms of the parties' agreement. The Court disagrees.

"[W]hen a state court has retained jurisdiction to enforce the terms of a settlement agreement and resolve disputes relating to that agreement, [] a district court should dismiss an action arising out of the agreement in favor of the state court adjudicating the dispute." *Chevaldina v. Katz*, No. 17-22225, 2018 WL 10517555, at *6 (S.D. Fla. Feb. 21, 2018). The dispute here, however, does not arise out of the Settlement Agreement. Indeed, Plaintiff does not challenge the foreclosure action or the validity of the Settlement Agreement. Rather, he contends that Defendants

failed to properly respond to his requests for payoff amounts in violation of consumer protection laws. As a result, the Court finds that the State Court's reservation of jurisdiction does not apply to Plaintiff's claims.[2]

**B. The Complaint is Not a Shotgun Pleading**

Avail argues that the Complaint is a shotgun pleading because (1) each Count incorporates by reference the same general factual allegations and (2) Count IV is alleged against all of the Defendants. The Court disagrees.

One type of shotgun pleading is "where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). That is not the case here. Under each count, the Complaint incorporates by reference paragraphs 1 to 71, which detail the allegations relating to Defendants' purported violations of consumer protection laws. "This is not a situation where the Complaint is difficult to understand because each claim is repeated in every count or where Plaintiff's referencing back is disorganized and incomprehensible." *Perricone v. Carnival Corp.*, No. 15-20309, 2016 WL 1161214, at * 3 (S.D. Fla. Mar. 24, 2016).

Another type of shotgun pleading is where the complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or

---

[2] Avail does not expressly argue that the *Rooker-Feldman* doctrine bars the Court from exercising jurisdiction over Plaintiff's claims. Rightly so. The *Rooker-Feldman* doctrine only bars claims that were "(1) [] actually adjudicated by a state court or (2) [] inextricably intertwined with a state court judgment." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1286 (11th Cir. 2018) (internal quotation omitted). "[D]istrict courts in the Eleventh Circuit that have applied the *Rooker-Feldman* doctrine to [debt-collection practices] claims have recognized a distinction between [] claims seeking to overturn state court judgments and [] claims seeking to hold defendants liable for violations of the statute occurring during collection efforts preceding any judgment." *Connor v. Midland Credit Mgmt.*, No. 18-23023, 2019 WL 717413, at *5 (S.D. Fla. Feb. 20, 2019) (internal quotation omitted). Therefore, "the mere existence of a final judgment will not preclude independent claims relating to the judgment if the district court is not required to determine the validity of the state-court judgment in order to grant relief to the independent claim." *Solis v. Client Servs., Inc.,* No. 11-23798, 2013 WL 28377, at *3 (S.D. Fla. Jan. 2, 2013).

omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1320. Count IV does not improperly lump the Defendants. Rather, it incorporates detailed allegations about each Defendant's role in the Loan, Foreclosure Action, and subsequent correspondence with Plaintiff. Therefore, the Court finds Avail's shotgun pleading arguments without merit.

### C. Fair Debt Collection Practices Act Claim (Count II)

In Count II, Plaintiff alleges Ritter violated sections 1692d, 1692e, and 1692f of the FDCPA. The FDCPA is designed to protect consumers from "abusive, deceptive, and unfair debt collection practices . . . ." 15 U.S.C. § 1692(a). "Thus, even where a debtor has incurred a valid debt that a creditor is entitled to collect, a debt collector may violate the FDCPA if its methods in attempting to collect the debt do not comply with the requirements of the FDCPA." *Solis v. Client Svcs.*, No. 11-23798, 2013 WL 28377, at *4 (S.D. Fla. Jan 2, 2013). To state a claim under the FDCPA, a plaintiff must allege that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Lima v. Bank of America*, 249 F. Supp. 3d 1308, 1312 (S.D. Fla. 2017) (internal quotation omitted).[3]

#### 1. § 1692d

Section 1692d prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

[3] Though Ritter argues that Plaintiff's allegations "fail at each step[,]" it did not address whether it qualifies as a debt collector. The Complaint alleges, and the Court agrees, that "Ritter is a 'debt collector' because it regularly collects or attempts to collect on the Loan and other loans owed to creditors, such as Avail." [ECF No. 1 ¶ 94] (citing 15 U.S.C. § 1692a(6)).

**a. In Connection with the Collection of a Debt**

"A communication has the necessary nexus to debt collection under the FDCPA if it conveys information about a debt and its aim is at least in part to induce the debtor to pay." *Lamirand v. Fay Servicing, LLC*, 38 F.4th 976, 979 (11th Cir. 2022) (internal quotation omitted). To make this determination, the Court looks at the communication "holistically." *Id.* An "FDCPA claim[] can survive a motion to dismiss so long as the[] complaint alleges that the statements plausibly aim[ed], at least in part, to induce [the plaintiff] to pay." *Id.* at 980 (internal quotation omitted).

The Ritter Letter characterized Plaintiff's Second Request and NOE as violations of the Settlement Agreement and warned that Plaintiff risked termination of the forbearance period, retention of all forbearance payments, additional fees or damages, termination of any concessions granted in the Settlement Agreement, and additional legal action. Those consequences related to Plaintiff's continuing obligation under the Consent Judgment and the means by which he could avoid a foreclosure sale. Viewed holistically, the Court finds the Ritter Letter conveyed information about Plaintiff's debt and was aimed, in part, to induce Plaintiff to pay. Accordingly, the Complaint adequately alleges communication in connection with a debt.

**b. Prohibited Conduct**

The Court next determines whether the Complaint adequately alleges that the "natural consequence" of Ritter's conduct was to "harass, oppress, or abuse" Plaintiff. § 1692d. While this determination is generally a question for a jury, "[c]ourts have dismissed [§] 1692d claims as a matter of law if the facts as alleged do not have a natural consequence of harassing or abusing a person in connection with the collection of a debt." *Sierra v. Rubin & Debski, P.A.*, No. 10-21866, 2010 WL 4384216, at * 2 (S.D. Fla. Oct. 28, 2010).

Section 1692d contains a non-exhaustive list of examples that constitute harassment, abuse, or oppression, including the use or threat of violence and the use of obscene or profane language. These examples "concern tactics intended to embarrass, upset, or frighten a debtor." *Moore v. Mandarich Law Group, LLP*, No. 1:21-CV-20481, 2023 WL 3600491, at * 3 (S.D. Fla. Feb. 7, 2023). Indeed, "it is not enough that a debt collector's actions caused the consumer 'embarrassment, inconvenience, and further expense, [] rather those actions must manifest a tone of intimidation." *Id.* (internal quotation omitted).

Plaintiff alleges that Ritter violated § 1692d because the Ritter Letter threatened to trigger penalties, fees, or legal actions against Plaintiff for exercising his statutory rights. [ECF No. 1 ¶ 96]. The Court finds that this allegation does not rise to the level of intimidation contemplated by § 1692d and, therefore, is insufficient to establish that the natural consequence of the Ritter Letter was to "harass, oppress, or abuse" Plaintiff. Accordingly, the Ritter Motion is granted with respect to the alleged violations of § 1692d.

**2. §1692e**

Section § 1692e prohibits a debt collector from using "any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt" including threatening "to take any action that cannot legally be taken or that is not intended to be taken"; falsely representing or implying "that the consumer committed any crime or other conduct in order to disgrace the consumer"; and using "any false representation or deceptive means to collect or attempt to collect any debt. . . ." § 1692e(5), (7), (10). As the Court has determined that the Ritter Letter was a communication in connection with the collection of a debt, it only addresses whether Ritter violated the statute.

The Court applies the "the least-sophisticated consumer standard to evaluate whether a debt collector's communication violates § 1692e of the FDCPA." *Leblanc v. Unifund CCR*

*Partners*, 601 F.3d 1185, 1193-94 (11th Cir. 2010). "The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* "However, the test has an objective component in that while protecting naïve consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *Id.* (internal quotation omitted). "[W]hether a representation . . . would be deceptive or misleading to the least-sophisticated consumer, or a collection practice would be unfair or unconscionable when applied to the least-sophisticated consumer, generally is a question of fact to be decided by a jury. *Holzman v. Malcolm S. Gerald & Assoc.*, 920 F.3d 1264, 1269 (11th Cir. 2019).

Plaintiff alleges that the Ritter Letter violated § 1692e(5) by threatening to take action that cannot legally be taken, including (1) terminating the Forbearance Period, (2) retaining forbearance payments, (3) recovering additional fees or damages, (4) terminating any concessions granted in the Settlement Agreement, and (5) taking legal action to enforce compliance or seek additional penalties. Plaintiff also alleges that Ritter violated § 1692e(7) by falsely representing that Plaintiff was acting contrary to the Settlement Agreement and Settlement Amendment and violated § 1692e(10) by using false representations and deceptive means to collect on the Loan. In response, Ritter argues that (1) Plaintiff breached the Settlement Agreement by questioning the amounts due under the Loan and (2) the Ritter Letter simply notified Plaintiff of this breach and the remedies Avail was legally entitled to pursue. As a result, Ritter contends that it did not use false representations and could, in fact, take the threatened legal action.

Ritter is correct that the Settlement Agreement, First Amendment, and Consent Judgment (the "Agreements") authorize certain consequences upon a default, including the legal actions referenced in the Ritter Litter. However, the Court cannot determine at this stage of the proceedings whether Plaintiff's Second Request or NOE constitute a breach of the Agreements. *See Holzman*,

920 F.3d at 1269. Indeed, there is nothing in the Agreements that expressly prohibits Plaintiff from requesting payoff information, disputing the propriety or accuracy of asserted payoff charges, seeking an itemization, or invoking statutory mortgage-servicing procedures. Accepting Plaintiff's allegations as true, the Court finds that the Ritter Letter contains representations that would be misleading to the least sophisticated consumer and threatens to take legal action that Ritter could not pursue. Accordingly, to the extent that Count II is based on Ritter's alleged violation of § 1692e, the Ritter Motion is denied.

**3. § 1692f**

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Plaintiff alleges, in a conclusory matter, that Ritter used unfair or unconscionable means to dissuade Plaintiff from exercising his statutory rights. "[T]o state a claim for violation of § 1692f, a plaintiff must either allege improper acts specifically enumerated in that section or allege misconduct *beyond that which the plaintiff alleges violates other provisions of the FDCPA*." *Lugassy v. Bank o[f] Am., N.A.*, No. 19-cv-61765, 2020 WL 9460216, at *8 (S.D. Fla. Mar. 6, 2020) (report and recommendation) adopted, 2020 WL 9460217 (S.D. Fla. Mar. 23, 2020) (emphasis in original). Plaintiff does not allege any of improper acts set forth in § 1692f and does not allege misconduct beyond that alleged for his § 1692e claims. Accordingly, to the extent that Count II relies on § 1692f, the Ritter Motion is granted.

**D. Litigation Privilege for Florida Claims (Counts III and IV)**

Avail contends that Florida's litigation privilege bars Counts III and IV because the Payoff Statement and Ritter Letter were sent during the Foreclosure Action. "Under Florida law, absolute immunity attaches to any act occurring during the course of a judicial proceeding, . . . so long as the act has some relation to the proceeding." *Solis v. CitiMortgage, Inc.*, 699 F. App'x 891, 894

(11th Cir. 2017) (internal quotation omitted).[4] "[T]he mere existence of FCCPA litigation does not attach the privilege to every communication between litigants; rather, the communication must be analyzed in light of its relation to the litigation." *N. Star Capital Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1331 (M.D. Fla. 2009). "Generally, such connection to the litigation includes actual pleadings and judicial proceedings." *Schaffer v. Aldridge Pte LLP*, 2019 WL 13246969, at *5 (M.D. Fla. Nov. 19, 2019). In addition, the litigation privilege is an affirmative defense and "should ordinarily be asserted in a responsive pleading and considered after the facts are developed on summary judgment or at trial." *Meyer v. Fay Serv., LLC*, 385 F. Supp. 3d 1235, 1242 (S.D. Fla 2019) (internal quotation omitted). However, Florida courts have held "that any affirmative defense, including the litigation privilege, may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the applicability of the defense to bar the action." *Id.* (internal quotation omitted).

The Complaint does not clearly show that the litigation privilege bars Plaintiff's claims under Florida law. *See Schaffer*, 2019 WL 13246969, at *5 (declining to apply the litigation privilege on a motion to dismiss because it was "debatable whether the payoff letter was part of the foreclosure proceeding . . . ."); *Salter v. PHH Mortgage Corp.*, 2022 WL 393374, at *5 (holding that "merely establishing there were pending foreclosure proceedings when the Payoff Statement was sent does not conclusively establish the litigation privilege applies."). While Avail may prove this affirmative defense at summary judgment or trial, it is not a basis to dismiss at this time.

**E. Florida Statute § 701.04 Claim (Count III)**

In Count III, Plaintiff alleges that Avail violated Florida Statute § 701.04(1) by (1) failing to timely respond to the written payoff request dated October 2, 2024, (2) reserving unspecified

---

[4] "This litigation privilege applies to violations of Florida state statutes, but does not apply to violations of federal statutes, such as the FDCPA" *Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1241-42 (M.D. Fla. 2019).

amounts beyond the quoted total, and (3) failing to provide an itemization breakdown of "other charges." [ECF No. 1 ¶¶ 113, 118–119].

Section 701.04 (1) provides in pertinent part:

> (a) Within 10 days after receipt of the written request of a mortgagor, . . . the mortgagee or mortgage servicer shall send or cause to be sent an estoppel letter setting forth the unpaid balance of the loan secured by the mortgage. . . .
>
> (b) The estoppel letter must at a minimum include:
>
> > 1. The unpaid balance of the loan secured by the mortgage as of the date specified in the estoppel letter, including an itemization of the principal, interest, and any other charges comprising the unpaid balance; and
> >
> > 2. Interest accruing on a per-day basis for the unpaid balance from and after the date specified in the estoppel letter, if applicable.
>
> (c) 1. Except for mortgages for which a notice of lis pendens in a foreclosure action or a suggestion of bankruptcy has been properly filed and recorded, the mortgagee or mortgage servicer may not qualify, reserve the right to change, or condition or disclaim the reliance of others on the information provided in an estoppel letter under paragraph (b), and any attempt to do so is void and unenforceable. However, if the mortgagee or mortgage servicer determines that any of the information provided in the estoppel letter under paragraph (b) was inaccurate, the mortgagee or mortgage servicer may send a corrected estoppel letter to the person who requested the estoppel letter in the same manner as used to respond to the original written request. If the original written request is made by a person other than the mortgagor, the mortgagee or mortgage servicer must also provide a copy of any corrected estoppel letter to the mortgagor.

Fla. Stat. § 701.04(1).

On October 2, 2024, Plaintiff sent Avail, through Ritter, the First Payoff Request. Avail did not respond within 10 days as required by § 701.04(1)(a). Moreover, when Avail, through Ritter, did respond, the Payoff Statement failed to provide an itemized breakdown of all charges.[5]

[5] While the lis pendens on the Property allows Avail to include qualifying language in the Payoff Statement, *see* § 701.04(1)(c), that does not excuse Avail from complying with the other requirements of the statute, including providing a timely response and itemization of other charges.

These allegations are sufficient to state a claim under § 701.04(1). Accordingly, Avail's Motion to Dismiss Count III is denied.

### F. Florida Consumer Collection Practices Act Claim (Count IV)

In Count IV, Plaintiff alleges that all Defendants violated the FCCPA by "claim[ing], attempt[ing], or threaten[ing] to enforce a debt when [they knew] that the debt is not legitimate, or assert[ing] the existence of some other legal right when [they knew] that the right does not exist." Fla. Stat. § 559.72(9). At this stage of the litigation, the Court finds that Plaintiff has adequately alleged his FCCPA claim against Defendants. The Ritter Letter, sent by Ritter as agent of Avail and PHL, threatens to assert several legal rights against Plaintiff in response to his Second Request and NOE. And Plaintiff alleges that Defendants knew these rights did not exist at the time the Ritter Letter was sent. These allegations are sufficient to state a claim under the statute. Ritter and Avail's argument (that Plaintiff breached the Settlement Agreement and that, therefore, the rights asserted in the Ritter Letter were legitimate and enforceable) is a question of fact that cannot be determined at this stage of the litigation. Therefore, Ritter and Avail's Motions to Dismiss Count IV are denied.

## IV. CONCLUSION

For these reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Avail 1 LLC's Motion to Dismiss, [ECF No. 15], is denied, and Defendant Ritter, Zaretsky, Lieber & Jamie, LLC's Motion to Dismiss Plaintiff's Complaint with Prejudice, [ECF No. 27], is granted in part and denied in part.

2. To the extent that Count II raises claims under 15 U.S.C. §§ 1692d and 1692f, those claims are dismissed. Plaintiff's claims in Count II under 15 U.S.C. § 1692e shall proceed along with Counts I, III, and IV.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 17th day of September, 2026.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE